CATHARINE A. SCHUCHARDT *vs.* THE MAYOR &c. OF THE
CITY OF NEW YORK.

Where commissioners appointed under the act of 1813, (1 *R. L.* 413, § 178,) to
estimate the damages sustained by land owners by reason of the extension
of a street in the city of New York, report that a portion of a lot will be
required, for the improvement, and award to the owner a specified sum, in
consideration of his relinquishing the said piece of land, with the improve-
ments thereon, for the purpose of such extension, and of his removing the
building from the lot; allowing the owner to retain the materials of which
the building consists, as part compensation for the damage sustained by
him; and such report is confirmed, on the application of the city corpo-
ration; the confirmation of the report is binding and conclusive upon the
corporation, as well in respect to the materials, as in respect to the other
portions. Per INGRAHAM, P. J.

If the awarding of the materials to the owner of the lot is objectionable to the
city corporation, they should make the objection before the confirmation of
the report. They cannot do so after it has been confirmed. And if they
convert such materials to their own use, they are liable to the owner. Per
INGRAHAM, P. J.

APPEAL from an order made at a special term sustain-
ing a demurrer to the complaint, and from a judgment
entered thereon. The demurrer was upon the ground
that the complaint did not state a cause of action.

The action was commenced by the service of a summons
for relief, and the complaint was framed with a double
aspect to both equitable and legal relief. The complaint
states, in substance, that at the time of the Church street
extension in 1867, the appellant owned a certain lot, known
as lot No. 7 on the Church street extension map, together
with a building on a portion of it, composed of brick,
stone, iron and timber, about thirty feet in width by fifty-
two feet in depth, and five stories high, the materials of
which building, if removed from the lot and sold, were
valued at about $10,000. That the commissioners for the
estimate of damages in the Church street extension mat-
ter, reported to the Supreme Court that the "lot, piece or
parcel of land" in question, belonging to the appellant,
would be required for the Church street extension. They

did not report that the building would be required. They also reported that the damage of the appellant, in consequence of her relinquishing the said lot, with the improvements thereon, for the purpose of said extension, and of her removing the building from the lot, which by the terms of the report they required her to remove, amounted to $29,040, and to this report, thus understood, the appellant consented. The complaint then avers, as a distinct, provable fact, independent of the report itself, that the commissioners who made it, and the court that confirmed it, both intended and meant by the report, and by its confirmation, to exclude from their estimate of the appellant's damages by reason of the taking of her lot, the value of the *old materials* of the *building then standing* on it, and both intended and meant that she should retain her title to the materials of said buildings, and should remove them from the lot at her own expense and for her own benefit. That as the commissioners did not need the building for the extension, they did not take it, nor pay for it, so far as it was valuable as old building material; but merely paid the owner for the lot and the building as a building, less the value of the building as old material; and for the expense of removing the materials of the building from the lot. The complaint further states, that if the report conveys any idea in reference to the ownership of the materials of the building, different from that above expressed, it is through mistake only. The complaint further states, that except in the case of special legislation, the view above expressed is in accordance with the uniform practice in respect to buildings standing on lots taken in the case of street openings in New York city heretofore, when the reports have been similar in phraseology to the phraseology of the one in question. It further states, that before the report was presented to the court for confirmation, the commissioners stated to the property owners interested, that the report gave them the

Schuchardt *v.* The Mayor &c. of New York.

right to the materials of the buildings, and the right to remove them from the lots taken, and thereby prevented them from making any objections to its confirmation by the court, and secured their aquiescence in it. The complaint then states that the appellant has always been ready to remove the materials of the building from the lot in question, but that the respondents, instead of allowing her so to do, on the 17th of April, 1869, converted those materials to *their own use.* Her damage thereby is estimated at the sum of $10,000, and she asks judgment for that sum, and for any further or other relief that may be appropriate to the case stated.

The respondent demurred to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action; and on the argument of the demurrer before Justice CARDOZO, the ground of the demurrer assigned by counsel was, that inasmuch as by section 178 of the act of April 9, 1813, (*see Davies' laws relative to the city, p. 534,*) the report, when confirmed, is declared to be final and conclusive on both appellant and respondents; and inasmuch as that section further declares that on the final confirmation of the report by the court, the corporation (the respondents) became seised in fee of all the lands, tenements, hereditaments and premises in the report mentioned, that should be required for the purpose of extending the street in question; that therefore, by force of the law itself, and the confimation of the report under the law, (the report having declared that the lot would be required for the extension,) the title to the building in question, as well as that to the lot, was conclusively and indisputably vested in the respondents.

The justice below sustained the demurrer, and held that the commissioners had power only to make an award, and that any provision contained in the latter part of the report, though intended as part of the award, was nevertheless *null and void.*

*J. Hooker Hamersley*, for the appellant.

I. Under the law of eminent domain, the State can only take what it is indispensably necessary to take for a public use. Here it was not necessary to take the materials of the building in order to extend the street, and if the commissioners had undertaken to take them, (which they did not do,) their act would have been void; and any law which might have authorized them to take them would also be void, the materials of the building being clearly not required for public use. The fact is admitted by the demurrer, that the corporation converted them to *their own use.* The respondents in fact sold the materials and put the proceeds into their own treasury. (*Const. State of N. Y. art. I*, §§ 6, 7. *Embury* v. *Conner*, 3 *Comst.* 511.)

II. The court below held that the lot in question was mentioned in the report as being required for the purpose of the extension, and that the building being on the lot, the law vested the title to the building in the respondents, even if the report mentioned the materials of the building as not being required, and as not being taken for the purpose of the extension. That the commissioners could not take and pay for the lot and, at the same time, leave the materials of the building on the lot, untaken and unpaid for; and that if they had undertaken to do so, the consequence would be, as in this case, that the corporation would be entitled to the materials without paying for them, unless objection was made by the owner of them, when the report was presented to the court for confirmation. This construction of the law is a harsh and novel one, contrary to the principle stated in point 1st, and contrary to a well established custom which has been acted upon in New York for over sixty years; in direct contemplation of which the report in question was prepared, and by which the city has required the owner to remove his building, and has allowed him the materials thus removed. This construction seems obviously as strained and un-

practical, as it is novel and unjust, by reference to the language of the act itself. The language of the act is not that the city, on the confirmation of the report, became seised in fee of all the lands, tenements, hereditaments and premises, in the report mentioned, but of all such as shall be so mentioned as being required to be taken for the extension; and this would be the construction to be put upon the law, even without these words, for of course the law itself, and the report, relate only to what is essential to the extension. If the construction of the court below can be maintained, then a portion of the appellant's property can, and has been, legally taken, not only "without just compensation," (*Const. art. I,* § 6,) but without any compensation whatever, simply because it was mentioned in a report which did not undertake to appropriate it to public use, and in a case in which it was not required for public use, and against which report there was, consequently, no reason on the part of the owner of the materials to object, when it was presented for confirmation to the court.

III. If the point taken by the justice below is overruled, then we submit that the plain intention and effect of the report of the commissioners of estimate and assessment in the opening of Church street, is to leave the appellant the ownership of the materials of the building in question, and the right of removing the same from the lot; and the respondents are, therefore, bound to pay her for the same, it being admitted by the demurrer that they have converted them, not to a public use, but to their own use. By the report in question, the materials of the building still belong to Mrs. Schuchardt. The commissioners intended to leave the materials to her, and they had authority to do so, especially as she acquiesced in that mode of adjusting her damages. 1. The intention of the commissioners is unmistakable on this point. (*a.*) It appears from the language of the report itself, which makes her an award for

relinquishing the land and the improvements thereon, and for removing the materials. If she is to remove them it is manifestly for her own benefit. This position is not affected by the fact that she is to relinquish not only the land but the improvements; for although she remains entitled to the building until removed, the very removal destroys it as an "improvement," and fully answers to the language of the report in that particular. (b.) The intention is still more plain when we consider the custom in view of which the commissioners acted. They regulated the award to the appellant on the basis of her retaining the materials of the building, for whatever they might be worth. This fact can be clearly established if the testimony of the commissioners who made the report is taken. 2. Such being the intention of the commissioners, they had sufficient authority to carry out the intention, especially with consent of the owner of the building. (a.) Their action in this respect has been fully ratified by the confirmation of the report, which thereupon becomes final and conclusive. (See act of April 9, 1813, ch. 86, § 178.) As we look at the legislative debates to determine the animus of a law, a fortiori, we can learn from the author of a report what his language means, and what was the contract with the parties damaged. This argument gains greater force when we consider that this whole proceeding is one instituted by the city to obtain a compulsory transfer of property to them. When, therefore, they have come to a distinct agreement, (acting by the commission as their representative,) they would seem to be doubly estopped from breaking that agreement in matters beneficial to the owner. (b.) The act of 1813 itself, by its express language, authorizes such a separation between the land and buildings on the question of ownership, and fully sanctions the action of the commissioners in this case, in taking the former for the city, and leaving the latter for Mrs. Schuchardt. Section 177 contemplates the "removal of build-

ings" as quite a different thing from the "taking of lands and tenements." The corporation is, therefore, not confined to the "taking" of buildings, but, when it will answer the purpose as well, may cause them to be removed by the owner, which necessarily implies a refusal to take. Sections 178 directs them to estimate the damage to owners of such "lands, tenements, hereditaments, and premises," as are required for the purpose of the street, and upon the confirmation of the report the corporation becomes seised in fee only of such "lands, tenements, hereditaments, and premises," mentioned in said report, as are required to be taken, for the proposed purpose. It follows, therefore, that the act contemplates just such a separation of ownership between the land and the building, as is sought to be carried out in this case. (*c.*) The act, by necessary implication, from the duties imposed upon the commissioners, authorizes them to relinquish the building to the owner, for the purpose of thus diminishing her award for damages. They are directed first to ascertain what is required to be taken, and their report, leaving the buildings to the former owners, is authorized as a declaration that they are not so required. Again; in estimating the damages done to the owners of lands, tenements, &c., they are not only authorized, but are bound to take into view, themselves, and to compel the owner to take into view all reasonable means within the latter's reach, by which that damage can be diminished. If, therefore, with her consent, they can leave her the building, either to remove to another place, or to dispose of as old materials, they are bound to do so in diminution of her award. They are not at liberty to estimate as damage the total value of buildings through which the street is to run, but must modify the estimate according to ordinary methods of diminishing it; i. e., where the side wall of a building is carried away, the true estimate would be the cost of building a new wall, and the decreased value of the building

when repaired.   So, if land be taken on which is an ornamental statue, which, though built into the soil, can be removed, they must require the owner to remove it, and not award him its value.   So of a building which can be readily removed, uninjured, upon adjoining land of the same owner.   So of valuable fixtures in a jeweler's store, bank, or the like.   These examples, and the practice under the law, show that the directions to estimate only the loss and damage occasioned to the owner, contains an implied authority to leave upon the owner, in exoneration of the improvement, whatever may thus be left without interfering with the measure.   It would seem, therefore, that the intention and effect of the report was, as stated in this point, to leave to Mrs. Schuchardt the undisputed ownership of the materials of the building, and the right to remove the same.

IV. The title to be acquired under these proceedings being, by force of the statute, transferred only for the purpose of a specified trust, i. e., to open and lay out a public street, &c., the act should be so construed as to give effect to the transfer, only to the precise extent required for the purpose of the trust, and as the materials were not required, no title to them was ever vested in the city.   1. The act of April 9, 1813, (*Davies' Laws, p.* 534,) declared, in effect, that on the final confirmation of the report of the commissioners, the corporation of New York shall become seised in fee of all the lands and premises that may be so required for the purpose of extending, &c., the street, the same to be appropriated and used for such purpose, accordingly, and thereupon the corporation may immediately, or at any time thereafter, take possession of the same, without any suit at law, in trust, nevertheless, that the same be kept open as a public street, provided that the corporation may permit any building on the line of a street, on the commissioners' map, to remain unremoved so long as it may think proper.   (*See act of April* 9, 1813; *Davies' Laws,*

*p.* 534.) In *Fletcher on Estates of Trustees*, we read, page 48, that "the very reasonable rule is generally to be observed, that every trustee must be presumed to take an estate as large as is necessary for the purpose of his trust, and no larger." In the words of Lord Ellenborough, "trustees must, in all cases, be presumed to take an estate commensurate with the charges or duties imposed upon them." (*Trent* v. *Hanning,* 7 *East,* 97.) "Trustees must not, in general, be construed to take a greater estate than the nature of the trust demands, since that would be unnecessarily to disinherit the heir, and, in some cases, to defeat the testator's intention, by preventing other limitations in his will from taking effect." (*Fletch. on Trustees,* 49. 5 *Taunt.* 383.) In the words of Lord Ellenborough, "When the purpose of a trust can be answered by a less estate than a fee simple, a greater estate than is sufficient shall not pass to them," i. e., to the trustees. (*Doe* v. *Simpson,* 5 *East,* 172. *Goodlittle* v. *Whitby,* 1 *Bun.* 229.) There is the same reason for interpreting a statute, so as to conform it to the object which the legislature had in view, as to construe a will in that way, or according to the intention of the testator. There is the same motive not to deprive the owner of his estate without compensation, as there is not to disinherit the heir. And especially when a contrary interpretation would be against the letter or spirit of the constitution. (*Lewin on Trusts, &c.,* 234.) The court is necessarily led to enter upon the consideration of the trust, in order to measure the extent of the legal interest by the scope and object of the equitable. The following rules of construction have, in consequence, been adopted: 1st. Wherever a trust is created, a legal estate sufficient for the execution of the trust shall, if possible, be implied. 2d. The legal estate, limited to the trustee, shall not be carried farther than the complete execution of the trust necessarily implies. Thus, it is evident that the commissioners had no right or power to do

that which the judgment in the court below takes it for granted that they have done, notwithstanding the fact that the commissioners themselves had no intention of so doing.

V. But if the court consider the report as in itself dubiously or obscurely expressed, and that it is a case where they could be aided in its construction by extrinsic evidence of custom, and of the sense given to the words used in the report by usage, and by the commissioners themselves; then our complaint is framed with a view to the taking of such evidence, which would fully show that invariable usage has long given to the words of the report the special meaning which we attach to them.

VI. We have also framed our complaint upon the theory that, through mistake, the report does not express the intention of the commissioners; and upon that ground to have it revised, so as to make it express their intention; inasmuch as we charge in the complaint, we were prevented from objecting to the report when presented to the court, and lost our opportunity of objecting by reason of the express declaration of the commission that the report was framed so as to leave to the property owners the title to the materials of the buildings.

*Richard O'Gorman*, for the respondents.

I. On the confirmation of the report of the commissioners, on the 30th day of December, 1867, the title to the lands required for the opening of Church street, with the tenements, hereditaments, and premises, was vested in the mayor, aldermen and commonalty of the city of New York.

By the 178th section of the act entitled " An act to reduce several laws, relating particularly to the city of New York, into one act," passed April 9, 1813, the duty of the commissioners was clearly and plainly defined. They were to make just and equitable assessment of the loss and damage   *   *   and report  *   *   " as and for the com-

pensation and recompense, and the same shall be the compensation and recompense to be made to such owner or owners, lessee or lessees, parties and persons respectively for his, her, or their loss and damage, by and in consequence of the said operation and improvement of opening, laying out, and forming or extending, enlarging or otherwise improving such said public square, place, avenue, street, or part or section of a street or avenue to be opened, laid out and formed, or extended, enlarged or otherwise improved, as the case may be, and relinquishing the said lands, tenements, hereditaments and premises so required of him, her or them, for that purpose.". * * (2 *Hoff. Laws, p,* 804. *Act of* 1813, § 178.) Other provisions of like import are contained in this section, which it is deemed unnecessary to set forth in *hæc verbo,* and are followed by the provision : "And said report, when so confirmed by the said court, shall be final and conclusive, as well upon the said mayor, aldermen and commonalty of the city of New York, as upon the owners, lessees, persons and parties interested in, and entitled to, the lands, tenements, hereditaments and premises mentioned in said report, and also upon all other persons whomsoever; and on such final confirmation of such report by the said court, the said mayor, aldermen and commonalty of the city of New York shall become and be seised in fee of all the said lands, tenements, hereditaments, and premises in the said report mentioned, that shall or may be so required for the purpose of opening the said public square, place, street or avenue, or park or section of a street or avenue so to be opened, * * * the same to be appropriated, converted and used, to and for such purposes accordingly. Thereupon the said mayor, aldermen and commonalty, or any person or persons acting under their authority, may immediately, or at any time or times thereafter, take possession of the same or any part or parts thereof, without any suit or proceeding at law for that purpose, in trust,

nevertheless, that the same be appropriated and kept open for or as part of a public street, avenue, square or place, forever," &c.

In the continuation of this section special provision is made relative to buildings on lands taken for street purposes in that portion of the city which was laid out under the act of April 3, 1807.

II. It will be seen by the statute that the commissioners had no authority to make any reference to the removal of buildings from the premises. It was their duty to estimate the loss and damage and compensate the owners for the land and improvements, and the statute declared that the fee of the land and improvements vested in the mayor, aldermen and commonalty.

The note to the report, that all buildings would be required to be removed, was of no effect. The commissioners had no power to make such a suggestion, and if the owners felt that they had not been awarded sufficient to cover the land and buildings, it was a proper and competent objection for them to make on the application for confirmation of the awards, and the corporation could not have answered, in law, that it did not take the buildings.

INGRAHAM, P. J. It cannot be necessary for the decision of this case, to inquire whether the defendants might not have been authorized to take possession of and sell any buildings standing on the portion of the street which is opened, if the commissioners award the value of such building to the owner. If it were necessary, I should have no hesitation in holding that such an award would vest the title to the property in the defendants.

In the present case, the averment is that the commissioners only awarded damages for injury to the building, and for removing it, and that the materials were awarded to the plaintiff as part compensation for the damages sustained by her. The act of 1813, (2 *R. L.* 413,) provides that the

Schuchardt *v.* The Mayor &c. of New York.

report, when confirmed by the court, shall be final and conclusive as well upon the mayor, aldermen and commonalty of the city of New York, as upon the owners, lessees and persons interested in the lands &c. and upon all other persons whatsoever.

The report is confirmed on the application of the defendants, and its confirmation is made conclusive upon them. I am at a loss to see upon what ground they can now say that the report is not binding as to the materials, as much as it is as to the other portions. If the awarding of the materials was objectionable to the defendants, they should have made such objections before the confirmation of the report. They cannot do so after the report has been confirmed.

It seems to me that the complaint does state a sufficient cause of action, and that the demurrer is not well taken. The judgment should be reversed, and judgment ordered for the plaintiff, on the demurrer, with leave to the defendants to answer on payment of costs.

GEO. G. BARNARD, J., dissented.

The judges before whom this case was heard having disagreed, the same was sent to the second department for hearing. (*See act of April* 27, 1870, *relating to the Supreme Court,* § 6.)

[FIRST DEPARTMENT, GENERAL TERM, at New York, April 3, 1871. *Ingraham,* P. J., and *Geo. G. Barnard,* Justice.]